JAMES J. BELDEN AND OTHERS, APPELLANTS, *v.* THE STATE OF NEW YORK, RESPONDENT.

*Canal contract — construction of it — right of the State to set off an over-payment made under a mistake of fact, against a balance due from it to the same contractor under another contract.*

One Belden entered into a contract with the State for the performance of certain work upon the canals. The contract provided, among other things, that all materials excavated should "be deposited so as to form the necessary banks for the canal, and in such other places as the State engineer shall direct, and when the same are carried over two hundred feet parallel with the line of the canal for the purpose of making embankments for the canal, or for the same distances in direct line to form bridge embankments or guard banks (spoil banks not included), the same shall be paid for both as excavation and embankments. No materials embraced under the head of excavation, and paid for as

such, will, when deposited in any embankment, be paid for as embankment unless the same has been moved two hundred feet in a line parallel with the canal, except as before specified for bridge embankments, and all embankments made from materials not embraced in the excavation will only be paid for as embankments." The contract provided that the work should be conducted in such a manner as not to interfere with or disturb the navigation and use of the canal, thereby requiring the bulk of the work to be carried on when the canals were closed by reason of frost and ice.

The contractor claimed that, at the time the excavation was made, much of the earth excavated was frozen and unfit to be placed at that time in the bank; that it was, for that reason, placed in what are known as "spoil banks," much of it in the prism of the canal, and that, when thawed out, it was removed to the side of the canal and placed in the embankment. For the earth so excavated and used they claimed to be entitled to charge as for embankment as well as for excavation, although it had not been removed 200 feet in a line parallel with the canal, or used for bridge embankments.

*Held*, that the claim was properly overruled by the board of audit.

Three contracts were made by Belden with the State. On the first he had been overpaid by the sum of $102,610.30; on the second there was still due and unpaid the sum of $7,605, and on the third the sum of $9,750.60. The payments were made to the contractor by the disbursing agents of the State, out of moneys appropriated by the legislature, upon monthly estimates of the work made by the engineers employed by the State, as provided in the contract. The contract provided a mode for correcting any overpayment made in consequence of error in the monthly estimates by authorizing the State to retain fifteen per cent of the amount of the work done until the final completion of the work. The work was completed on May 17, 1875. After that date payments were made to the contractor amounting to $81,409, the last of which, amounting to $19,023, was made on June 1, 1875. No action of the legislature, taken after these payments, which could be construed as a ratification thereof, was proved.

*Held*, that the board of audit properly decided that the overpayment made by the State was made under a mistake of fact, and that the amount so overpaid might and should be set off against the balances due on the other contracts. (HARDIN, J., dissenting.)

*People* v. *Denison* (80 N. Y., 656; affirming S. C., 19 Hun, 137), distinguished.

APPEAL from a decision of the late board of audit dismissing the appellants' claim against the State.

*M. A. Knapp*, for the appellants.

*Leslie W. Russell*, attorney-general, *James A. Dennison*, first deputy attorney-general, and *D. Magone, Jr.*, for the respondent.

SMITH, P. J.:

The claimants established a *prima facie* right to recover the amounts unpaid for work done and materials furnished under contracts " B " and " C " mentioned in the record book, and they are entitled to judgment for the same unless some defense thereto has been made out. The board of audit found that the amount unpaid on contract " B " was $7,491, and on contract " C," $9,750.60. In ascertaining the amount unpaid on contract " B," the board seem to have adopted the sum shown by the estimate of February, 1875, to have been unpaid on the first day of that month. It appears by uncontradicted evidence, that there was unpaid for work done during that month, and not included in said estimate, the sum of $114. That sum should be added to the amount found by the board, making the sum of $7,605 unpaid on contract " B." If the claimants are entitled to recover those sums there should be added to them interest from the 1st day of September, 1875.

The board of audit found that the claimants had been overpaid on contract " A " in a sum largely exceeding the amounts unpaid on contracts " B " and " C," and on that ground the entire claim was dismissed. The claimants contend not only that their claims under the last two contracts were improperly denied, but that they were entitled to recover a large sum in addition for work done and materials furnished under contract " A."

In respect to the latter contention, it is to be observed that the board found that the several items of work done and materials furnished by the claimants under contract " A," or in extra work pursuant thereto, amounted, at the prices agreed on therefor in said contract, to only the aggregate sum of $314,960.70, which was less by $102,610.30 than the sum which the claimants admitted they had received from the State on said contract. If that finding is warranted by the evidence, it defeats the claim to recover under contract " A."

The principal items embraced in said finding are " earth " and " rock " excavation, " embankment," vertical wall " dry," and " cement," and " hemlock timber." There are several minor items to which it is not necessary to refer, for the reason that if the finding is sustained as to the larger items above mentioned, it is sufficient for all the purposes of the defense.

The difference in the amount of earth excavation and also of embankment allowed by the board, and that claimed by the appellants, depends to some extent on the interpretation of the contract. The specifications forming part of the contract provide that "all materials removed as aforesaid" (excavated) "shall be deposited so as to form the necessary banks for the canal, and in such other places as the State engineer shall direct, and when the same are carried over 200 feet parallel with the line of the canal for the purpose of making embankments for the canal, or for the same distances in direct line to form bridge embankments or guard banks (spoil banks not included), the same shall be paid for both as excavation and embankments. No materials embraced under the head of excavation, and paid for as such, will, when deposited in any embankment, be paid for as embankment unless the same has been moved 200 feet in a line parallel with the canal, except as before specified for bridge embankments, and all embankments made from materials not embraced in the excavation will only be paid for as embankment."

The appellants claimed for 73,460 cubic yards of embankment, and the board allowed 10,445⅔ yards only. The board found that of the embankment so claimed all but 10,445⅔ yards was composed of materials which had been embraced under the head of excavations and paid for as such, and that none of it had been moved 200 feet in a line parallel with the canal, and none of it was for bridge embankment. This finding appears to be supported by the evidence. But it is claimed by the appellants that the evidence shows also that at the time when the excavation for the wall was made much of the earth excavated was frozen and unfit to be placed at that time in the bank. It was therefore placed in what is known as "spoil bank," much of it in the prism of the canal, and when it thawed out it was removed to the side of the canal and there placed as embankment. These latter circumstances are supposed by the appellants to take the case out of the provisions of the contract above quoted, it being contended that those provisions applied only to the excavated earth, which could be immediately placed as embankment, and did not apply to earth which, as in the present instance, was handled twice. We think the interpretation above suggested cannot be maintained. The language of the specifications, bearing upon the question is clear and

hardly admits of construction. If the necessity of putting the earth in spoil banks arose from the fact of its being frozen when excavated, the parties to the contract must be presumed to have foreseen that contingency, as the contract expressly provided that the work should be conducted in such a manner as not to interfere with or disturb the navigation and use of the canal, and consequently the bulk of the work could only be carried on when the canals were closed by reason of frost and ice. To adopt the interpretation contended for by the claimants would be to alter the contract.

Proof was given as to the custom in such a case. It is very doubtful whether custom could affect the contract made by the parties in that regard, but however that may be, the testimony as to the custom was conflicting, and the conclusion of the board, in that particular, cannot be said to be so clearly against the weight of evidence, as that it should be disturbed for that reason.

The difference between the findings of the board and the claims of the contractors as to the amount of enbankment, and of earth and rock excavation, and also of wall and timber, is largely accounted for by the different methods adopted by the witnesses for ascertaining such amounts. Without going particularly into a description of those methods, in respect to which there is a large mass of testimony, it is enough to say that upon reading it with the aid of the very full and helpful briefs of counsel on each side, we are satisfied that the evidence warrants the conclusion of the board as to the amount of the several principal items of work done and materials furnished above referred to, and that a reversal of their findings in those respects, as being clearly against the weight of evidence, would not be justified.

It does not appear that the board rejected any part of the claim on the ground that it was for work or materials not within the contract, or on the ground that in making the contract the State officers exceeded their authority. They allowed the claimants the prices fixed by the contract for all the items of work done and materials furnished which, in their judgment, were established by a preponderance of evidence; and a complete defense to the claim made under contract "A" (and also to that made under the other contracts, if there is no legal obstacle in the way of extending the defense to

those contracts, a point that will be considered presently), consists in the fact that the aggregate sum so found to have been earned by the claimants under contract "A," falls short of the payments made to them under said contract in a sum exceeding the amounts unpaid on contracts " B " and " C."

The fact that the engineers employed by the State made monthly estimates of the work as it progressed, and that the disbursing agents of the State made payments thereon from time to time out of moneys appropriated by the legislature, does not estop the State from asserting the defense above stated. The monthly estimates were provisional and were prepared as a basis upon which to make payments during the progress of the work, subject to a final estimate at its completion. The contract provided a mode of correcting any over-payment made in consequence of error in the monthly estimates, by a stipulation that the State might retain fifteen per cent of the amount of work done and materials furnished until the completion of the work. The provision that the resident or other engineer should inspect the work and determine its amount from time to time was not to stand in the place of a final settlement, and was merely an additional safeguard for the State. (*Glacius* v. *Black*, 50 N. Y., 145.)

For these reasons we think that the action of the board of audit in respect to the claim under contract " A " should be affirmed.

Is a defense shown to the claims under contracts " B " and " C," which is now available to the State ? The board of audit, as has been said, applied the overpayment found by them under contract "A," to the extinguishment of the claims under the other contracts. Two facts were found by the board upon which they probably rested such application, namely : first, that the estimates upon which the payments were made by the State, were prepared for the purpose of defrauding the State, which purpose was known to the agents of the contractors ; and secondly, that the payments made by the disbursing officers of the State, were made under a mistake of facts. We regard the case of *The People* v. *Denison*, decided by the General Term in the Third Department (19 Hun, 137), and by the Court of Appeals (80 N. Y., 656), as a conclusive adjudication adverse to the State upon the question of fraud.

It is contended by the counsel for the appellants that the case

referred to also concludes the State upon the question of mistake of fact, and is an adjudication that the State cannot recover back from the claimants any sum that may have been overpaid them on contract "A." We do not understand the case to go to that length.

For the purpose of considering the question, we assume that no fraud was practiced, and that the overpayment, if there was one, was the result of mutual mistake. The claimants assert for themselves, that they acted in good faith in presenting the monthly estimates and receiving pay thereon, and if the engineers committed any error in preparing the estimates, it was unintentional on their part.

We do not discover in the reports of the Denison case that the question whether the overpayment was made under such circumstances as that the same might be recovered back, was set up or considered. It was claimed by the State in that action that a large part of the work done by the claimants and for which they received pay, was outside of the contract, and that the State officers who ordered and consented to such work, had no authority to so enlarge the contract, and that such work was without legal sanction, and for that reason the money paid therefor should be restored to the State. It appears by the report of the referees before whom that case was tried, that of the amount held by them to be due to the State, and for which judgment was rendered, the principal part was for sums of money paid by the State for work, labor and materials which the referees held was not embraced within the contract. The Supreme Court reversed the judgment, giving as one of its reasons therefor, that as the State had the benefit of the work and labor bestowed upon the canal and retained the title to the material, it could not in justice recall the payment made for the same without allowing for its actual value. In the report of the case in the Court of Appeals, the text of the opinion is not given, but three propositions are stated to have been passed upon by the court. The only one material to the question under consideration is the following, to wit : That there was a ratification by the legislature of the unauthorized payments. By the term "unauthorized payments" we understand the court referred to payments made by the State officers for work not embraced in the contracts, and in ordering which, or consenting to the same, the State officers

exceeded their authority. The questions whether payments of that nature could be recovered back, and whether the action of the legislature was a ratification of such payments, were in the case. But the question whether the legislature had ratified an overpayment for work done and materials furnished, under a mistake as to the amount of such work and materials, we do not understand was contested in the case, or was passed upon by either of the tribunals in which the case was litigated.

It appears by the appeal book before us that the work under contract "A" was completed 17th May, 1875. After that day payments were made to the claimants under that contract, amounting to $81,409, the last of which, amounting to $19,023, was made on the 1st day of June, 1875. We find no evidence in the appeal book or in the statutes of the State, of any legislative action, after such payments, which can be construed as a ratification of the same. The last of those payments exceeds in amount the principal sums due to the claimants on contracts "B" and "C." Unless there has been legislative sanction and ratification as to the sums overpaid, they constitute a just and legal set-off to the claims as to which the appellants established a *prima facie* right to recover, and as they exceed such claims in amount, they are a full defense thereto.

The decision of the board of audit should be affirmed, with costs.

BARKER, J., concurred.

HARDIN, J., dissents from so much of the opinion as holds that the claimants are not entitled to recover the amounts unpaid on contracts B and C, he being of the opinion that judgment should be ordered in favor of the claimants for those amounts.

Affirmed, with costs.